[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Procedural History
This lawsuit first came to this court by a Complaint for Partition or Sale of Real Estate dated July 16, 1993, and returnable August 31, 1993. The action for partition involves three separate pieces or parcels of real estate which, throughout the course of these proceedings, have been referred to as: 1) The Stockhouse Road property in Bozrah; 2) The Dudley Street property in Norwich; and, 3) The Fitchville Road property in Bozrah.
The complaint recited that the plaintiffs and the defendant were co-owners of certain tracts of real property described in Schedule A annexed to the complaint. The schedule also reflected the respective undivided interests of each of the parties.
The prayer for relief requested: 1) A partition of the real estate according to the respective rights of the co-owners; 2) A sale, if it would better promote the interests of the co-owners, and a division of the proceeds; and, 3) The appointment of a committee to make such a sale.
The defendant appeared on August 31, 1993. The defendant filed an Answer with four Special Defenses on December 7, 1993. On December 7, 1993, the defendant Donald R. Beebe filed a counterclaim and set-off seeking money damages, punitive damages, attorney's fees, exemplary damages and other relief. The special defenses claimed, unclean hands by the plaintiffs, prior inappropriate conduct, an accounting and credit and estoppel. On March 17, 1994, a Reply to Special Defenses was filed. On March 17, 1994, an Answer to the Defendant's Counterclaim was filed. CT Page 11688
II. Findings of Fact
The court makes the following findings of fact:
A. The Parties
There are three parties to this action for partition, all are siblings. The two plaintiffs are Dr. Roy Beebe and his sister, Florence Mahoney. Throughout these proceedings they have been represented by the same counsel. The defendant, Attorney Donald Beebe, is the brother of the plaintiffs.[1]
Alvah and Florence Beebe were the parents of the four siblings, Roy, Donald, Florence and James. At one time, the parents owned the three subject properties. After the respective deaths of both parents, and the administration of their estates, the four siblings each became owners of a 25% undivided interest in each of the three properties.
After the death of the siblings' father Alvah Beebe, and the subsequent administration of his estate, the Dudley Street property was distributed to the siblings. Each received a 25% undivided interest in that property on August 3, 1990.
Following the death of the siblings' mother, Florence Beebe, on February 10, 1989, and the subsequent administration of her estate, the four siblings became 25% owners of undivided interests in the Stockhouse Road property and the Fitchville Road property on February 10, 1992. The administrator of both parents' estate was Attorney Donald Beebe.
Dr. Roy Beebe is an orthopedic surgeon who presently resides in Farmington. Dr. Beebe, along with his siblings, grew up on the Stockhouse Road property. Since acquiring his interest in the various parcels of real estate from his late parents, he has been greatly concerned as to issues of personal liability pertaining to the various parcels, structures and residences thereon, and occupancy by various tenants. Communication between Dr. Beebe and his brother Attorney Donald Beebe is non-existent except through Attorney Beebe's counsel. The atmosphere between the siblings, the plaintiffs versus the defendant, has been acrimonious and unhappily bitter.
After the orderly probate of the parents' estates as noted, CT Page 11689 Dr. Beebe acquired his brother James' quarter (25%) interest in all the parcels for $100,000.00 on December 30, 1992. While testifying in court, Dr. Beebe expressed his frustration on diverse occasions at being left to deal with his brother's assigned intermediary either, Attorney O'Dea or Attorney Norton.[2]
Florence Mahoney, a resident of Auburn, Massachusetts, is the sister of Dr. Beebe and Attorney Beebe. Florence Mahoney acquired her interest in the orderly probate of the estate of Alvah and Florence Beebe. She has four children.
There has been extremely limited contact between Florence Mahoney and. Attorney Donald Beebe since 1989. Florence Mahoney has discussed matters pertaining to the real estate with siblings Dr. Beebe and James Beebe. At one point in time, Florence Mahoney offered to manage the various parcels of real estate involved in these proceedings. No agreement could be secured as to that offer. Florence Mahoney never gave any consent or approval for the payment of any expenses or charges relative to the subject parcels. Florence Mahoney was desirous of having the various parcels exposed for sale. Florence Mahoney testified that she had attempted to contact Donald Beebe on numerous occasions via mail and telephone to discuss the disposition of the subject premises. She was forced to communicate with Donald Beebe's legal representative and expressed frustration at his personal unavailability.
Attorney Donald Beebe grew up with his siblings on Stockhouse Road. He has been an active legal practitioner for many years with a wide general practice in real estate, probate of estates, bank counsel, and tax advisor. Attorney Beebe owns extensive real estate holdings. After the orderly probate of the parents' estates, where he was the fiduciary, he managed the various parcels as concerns any rental income therefrom.
At the time of the commencement of these proceedings, the parties had the following undivided ownership interest of record in all three properties:
 Plaintiffs: 1. Dr. Roy Beebe 50% 2. Florence Mahoney 25% --- Plaintiffs' total undivided interest 75% CT Page 11690
Defendant: 1. Atty. Donald Beebe 25%
 Defendant's total undivided interest 25% ---- Grand Total: 100% ====
 B. The Properties
 1. The Stockhouse Road Property:
The Stockhouse Road property consists of 73 +/- acres, most of which are in Bozrah, Connecticut, but approximately two acres are located in Franklin, Connecticut.[3] The owners of record of the property and its improvements are as follows: Attorney Donald Beebe, 1/4 interest, Dr. Roy D. Beebe 1/2 interest, and Florence B. Mahoney, 1/4 interest.[4] The property has over 3,000 feet of frontage along Stockhouse Road in Bozrah and over 400 feet of frontage along Route 87 in Bozrah and Franklin.
With the exception of a railroad right-of-way and a fringe of trees and brush along the Yantic River, the Stockhouse Road property is mostly open fields. In addition to a two-family home which contains a small apartment, the property also has a large barn and related out buildings. The condition of the two-family residence is average to poor, and the entire parcel is served by an on-site well and septic system. The Stockhouse Road property occupies a fairly large proportion of the land along the east side of the entire length of Stockhouse Road. The premises are zoned I-80 Industrial (Bozrah portion), and C-2 Commercial (Franklin portion). The subject neighborhood is sparsely developed with only a few residences. Along the west side of Stockhouse Road there is the Liquid Carbonic Air Reduction Plant, an electrical substation, wetlands owned by the town, and vacant land.
The premises are bordered on the north and east by Connecticut Route 87 and on the south by the Yantic River. Municipal water and sanitary sewers are not yet available but municipal water is nearby. Subject premises are located on the south side of Stockhouse Road and the westerly side of Connecticut Route 87. There is a Connecticut Light Power pole line easement that runs in a north-south direction in the western portion of the subject premises. There is a spur track of the Central Vermont Railroad Company which runs parallel to the CT Page 11691 southern boundary of the premises.
The southeastern portion of the premises, approximately 13 acres, are wetlands. There are additional wetlands plus a brook on the premises. Wetlands comprise 30% of the total land area. The majority of the subject premises are located in flood hazard Zone C, an area of minimal flooding. Portions of the premises, however, located along the Yantic River and the brook are located in flood hazard Zone B. The highest and best use of the subject premises as to the major portion, thereof, 71 acres is considered to be future industrial development in accordance with zoning regulations and other land use controls. The highest and best use of the smaller portion containing the residence and 2 acres is its existing two-family residential use.
The Stockhouse Road property has not previously been subdivided. Stockhouse Road has been widened as part of the Town of Bozrah's efforts to encourage economic development. Liquid Carbonics (the user across the street from the Stockhouse Road property) and the Town of Bozrah jointly worked to install a 16 inch water main to bring a municipal water supply up Stockhouse Road from Old Route 2 (Fitchville Road). An electrical substation is located across the street from the subject property.
The Town of Bozrah Assessor's Office identifies the property as map 4, lot 56 and 57. The Town of Franklin Assessor's Office identifies the property as Map 17, lot 7. Subject property known as map 4, lot 57 is a legal, preexisting, nonconforming use as it does not conform to present use requirements. The assessment valuations on the property are:
Bozrah
 Map 4, lot 56 $ 49,490.00 Map 4, lot 57 $121,400.00
Franklin
Map 17, lot 7 $ 560.00
The total current annual tax burden on the premises are:
 Bozrah $ 3,588.69 Franklin $ 11.26 CT Page 11692
Although the defendant offered extensive testimony on how this property could be divided, the court feels there are substantial impediments to doing so including wetlands (30% of the total land area), flood plain problems from the Yantic River, easement for power line and railroad spur.
2. The Dudley Street Property:
The Dudley Street property is located in central Norwich, Connecticut, in an R25 residential zone with approximately 2,100 feet of frontage along Dudley Street and approximately 500 feet of frontage along Gifford Street. The premises comprise a land area of 66.5 acres. The premises are zoned R-25 residential. There is a frame two-family residence, a barn and several outbuildings on the premises. The two-family residence is in average to poor overall condition. Land use in the surrounding area consists of single family residential uses with vacant land available for residential development.
The property was used for farming as late as 1992. There is a small water course which flows across the property in a northwest to southwest direction and passes under Gifford Street near the south boundary of the subject premises. The front part of the site is mostly open grass land and the rear and northern part is tree covered.
Substantial engineering work would have to be done in order to determine how many lots could be developed on the Dudley Street property. That work would include obtaining a soil scientist to flag the wetlands, on site test holes for septic system, survey work, preliminary lot layout and road design. Such work would cost between $4,000 to $5,000 per lot without any cost for any construction or legal fees for subdivision approval, but merely the cost for planning.
The Norwich Assessor's Office identifies the premises as map 177, block 2, lot 12 and map 175, block 1, lot 12A. The two-family residence is a preexisting, legal, nonconforming use. Current regulations do not permit two-family residences. The assessment valuation on this property are:
 Map 177, block 2, lot 12 $72,390.00 Map 175, block 1, lot 12A $91,770.00
The current annual tax burden on the premises is $3,675.54. CT Page 11693
Municipal water and sanitary sewers are available. There is an easement in favor of the City of Norwich located in the northern portion of the subject site. There is an area of wetlands located in the central section of the subject premises. The premises are located in flood hazard Zone X. The highest and best use for the major portion of the premises 65.5 acres is considered to be future single family residential development in accordance with zoning regulations and other land use controls. The smaller portion, one acre on which the residence is situated, the highest and best use would be its existing two-family residential use.
The court finds that it would be extremely difficult to divide this property fairly, mindful of the zone designation and the costs that would be required to come to any fair division relative to surveys, soil tests, preliminary subdivision planning, cost of roads, water and sewers in order to determine how many lots might be allowed within the buildable confines of this tract.
3. The Fitchville Road Property:
The premises comprise 41 +/- acres situated on Fitchville Road, Bozrah.[5] Twenty-five acres are situated on the northerly side of Route 2. The remaining 16 acres contain the house and barn. Route 2 is a limited access highway. There is a 1 and 1/2 story, Cape Cod style single-family residence on said premises as well as a large old barn. The northern portion of the subject site fronts the Yantic River. Access between the parcels divided by Route 2 is limited and difficult. The premises are zoned R-2 multi-family residential and RU-1 rural residential. Multi-family housing predominates in the area.
The Bozrah Assessors Office identifies the premises as map 4, lot 68 and map 7, lots 89 and 90. The premises are a legal, preexisting, nonconforming use as it does not conform to present street frontage requirements.
The assessment valuations on this property are:
 Map 7, lot 90 $53,420.00 Map 7, lot 89 $54,080.00 Map 4, lot 68 $ 8,100.00 CT Page 11694
Total current annual tax burden on the premises is $2,427.60 annually.
Subject premises are comprised of approximately 60 to 70 percent wetlands. Parcel is located in flood hazard Zone C, Zone B and A-11. Connecticut Route 2 bisects the subject premises in an east-west direction. Access between the divided premises in part is via a tunnel under Route 2. Premises are served by an on-site well and septic system. Municipal water is available.
The court finds that this parcel does not lend itself to being divided and respective portions set out to the parties entitled primarily because it is divided by Connecticut Route 2. Access to the other side of Route 2 is only through a narrow tunnel type underpass under the highway.
C. The Appraisers
1. Robert J. Flanagan
Robert J. Flanagan is a real estate appraiser, and he testified on behalf of the plaintiff's. He holds the designation of M.A.I. He has been so engaged for thirty-two years in Connecticut. He has conducted and prepared thousands of appraisals. He presently has an office in Waterford. Mr. Flanagan is a Certified General Appraiser in Connecticut, Maine, Rhode Island and South Carolina. He is licensed in three states. He was an assessor for the City of New London for twenty-nine years as well as Director of Real Estate. He holds a degree in Economics. He is a lecturer in real estate appraising. He is familiar with, and has done appraisals in Norwich, Bozrah and Franklin. Mr. Flanagan appraised the three subject parcels involved in these proceedings. Mr. Flanagan's credentials are lengthy and impressive. (Plaintiffs' Exhibits 1, 2 and 3.) Mr. Flanagan appraised the respective parcels as follows:
 Stockhouse Road $708,000.00 Dudley Street $444,000.00 Fitchville Road $103,000.00
Mr. Flanagan explained the methodology employed to determine fair market value. He relied on comparable sales as the most effective method of appraisal. Mr. Flanagan testified at some length that a divided piece of a parcel does not necessarily CT Page 11695 retain the same characteristics as the whole parcel. He felt that a division of any of the properties would be inequitable to one or more of the owners.
2. William Henry
William D. Henry is a real estate appraiser and has been so engaged since 1973. He was licensed by the State of Connecticut in 1989. Mr. Henry appraised the respective parcels as follows:
 Stockhouse Road $1,600,000.00 Dudley Street $ 270,000.00 Fitchville Road $ 115,000.00
Mr. Henry is not an M.A.I. appraiser. The court finds that Mr. Henry's appraisal and analysis is flawed as to Dudley Street by his determination that the highest and best use is as agricultural land. Further agricultural uses (unless grandfathered in) are not permitted in the R-25 district in which the property is located. Further in order to arrive at his appraisal figure on the Stockhouse Road premises he had to resort to a "200% adjustment."
3. James Platt
James N. Platt of Pomfret has been an appraiser for thirty-two years. He holds a B.A. in Geology and Civil Engineering. Mr. Platt holds an M.A.I. designation. Mr. Platt appraised the respective parcels as follows:
 Stockhouse Road $1,128,000.00 Dudley Street $ 206,000.00 Fitchville Road $ 110,000.00
Mr. Platt has never before this proceeding appraised real estate in Bozrah. The number of his appraisals in Norwich have been negligible. Mr. Platt did not feel that a division of the Stockhouse Road property would harm the separate parts.
Because of defendants Beebe's extensive dealing in the real estate market, he testified in court that he felt that the value of the respective parcels were as follows: CT Page 11696
 Fitchville Road $ 115,000.00 Dudley Street $ 270,000.00 Stockhouse Road $1,500,000.00 to $1,600,000.00
A chart of the respective appraisals is herewith set forth.
Appraisal Chart
 Fitchville Dudley StockhouseAppraiser Road Street Road
----------------------------------------------------------- Flanagan $103,000 $444,000 $ 708,000 Date: 08-24-94 08-24-94 08-24-94
Plaintiffs' Exhibit No. 1 No. 2 No. 3 ----------------------------------------------------------- Henry $115,900 $270,000 $1,600,000 Date: 12-27-94 12-28-94 12-29-94
Defendant's Exhibit No. 3 No. 2 No. 1 ------------------------------------------------------------ Platt $110,000 $206,000 $1,128,000 Date: 12-12-94 12-15-94 12-12-94
Defendant's Exhibit No. 6 No. 5 No. 4 ------------------------------------------------------------ Donald Beebe $115,000 $270,000 $1,600,000
In addition to the testimony of each appraiser, and a review of the written appraisals, the court has visited each of the subject parcels in company with counsel and reviewed each, noting any structures, their condition, wetlands, the Yantic River, the topography, elevation, abutting roads or highways, vegetation, power lines, railroad spur and overall appearance and proximity to adjacent premises and their present or permitted uses.
The court has carefully examined the credentials of each of the appraisers, Flanagan, Henry and Platt. The court has carefully reviewed each of the appraisals submitted and has considered the testimony of the defendant as to his opinion as to the value of each property.
The court finds that the appraisals done by Robert J. Flanagan, M.A.I. are the only appraisals that the court can CT Page 11697 accept. Mr. Flanagan's credentials are impressive and in terms of experience, positions held and general accomplishments, far exceed the qualifications of the other appraisers.
Having viewed the premises with particular reference to the Stockhouse Road property, the court cannot accept the valuations placed on this property by either Mr. Henry or Mr. Platt. The values placed on the Stockhouse Road property by Mr. Henry and Mr. Platt cannot be sustained on the evidence and, in the court's opinion, are unrealistic.
Other Witnesses
Mr. Richard Strouse is a consulting engineer and land surveyor, and testified on behalf of the defendant Donald Beebe. He is licensed by the State of Connecticut and New York. Mr. Strouse is familiar with the three subject premises. Strouse has done survey work concerning the Stockhouse Road premises and its possible division. Steven J. Kaplan is a Certified Public Accountant and Senior Tax Advisor and testified as to the tax consequences of sale of the subject premises and basis factors from a review of Federal Estate Tax returns concerning the late Alvah and Florence Beebe.
In his capacity of fiduciary of his parent's estates, Attorney Beebe employed the services of Herbert Reiss from the Reiss Agency. Attorney Beebe did not retain the Reiss Agency to perform the appraisals with respect to this action notwithstanding his past approval of their work and the fact that the accountant Kaplan predicated the dire tax consequences of a sale on those appraisals. None of the parties to this litigation offered perimeter surveys of any of the parcels involved by a registered land survey or such as a class A-2 survey.
III. Discussion
 Standards for Partition
Section 52-495 of the Connecticut General Statutes authorizes courts of equitable jurisdiction to order, upon complaint of any interested party, the physical partition of any real estate held by tenants in common and the appointment of a committee for that purpose. If the physical partition results in unequal shares, a money award can be made from one tenant to another to equalize the shares. 4A Powell, Real Property Section, 612 pages 653-54; CT Page 11698 American Law of Property, Partition Section, page 113. When, however, in the opinion of the court, a sale of jointly owned property "will better promote the interests of the owners," the court may order such a sale under Connecticut General Statutes § 52-500. Delfino v. Vealencis, 181 Conn. 533, 536 (1980).
It has long been the policy in Connecticut to favor a partition in kind over a partition by sale. Harrison v.International Silver Co., 78 Conn. 417, 420 (1905).
Although, under the provisions of Section 52-500, a court is no longer required to order a partition in kind even in cases of extreme difficulty or hardship, a partition by sale should be ordered only upon the satisfaction of two conditions: (1) the physical attributes of the land are such that a partition in kind is impracticable or inequitable, Johnson v. Olmsted, 49 Conn. 509,517 (1882); and (2) the interests of the owners would be better promoted by sale and a division of the proceeds of the sale according to their respective interests. Kaiser v. SecondNational Bank, 123 Conn. 248, 256; Gould v. Rosenfeld,178 Conn. 503 (1979); Filipetti v. Filipetti, 2 Conn. App. 456
(1984); Delfino v. Vealencis, 181 Conn. 533, 537-538 (1980).
Since Connecticut law presumes that a partition in kind would be in the best interest of the owners, the burden is on the party requesting the partition by sale to demonstrate that such a sale would better promote the owners' interest. 59 Am.Jur.2d, Partition, Section 118.
Dr. Beebe testified that as an orthopedic surgeon with a substantial income, he had distinct concerns about the potential liability that may result from ownership of the subject parcels. Dr. Beebe endeavored on numerous occasions to resolve disputes pertaining to the ownership of the premises with the defendant, sent numerous letters requesting meetings and responses, all of which failed, including all telephone contacts. Dr. Beebe and Mrs. Mahoney were always required to try and communicate via the defendant's attorney who was a member of defendant's law firm.
The evidence indicates that there are no mortgages, liens or attachments on the subject premises and the same appear to be free and clear and unencumbered. Mrs. Mahoney's efforts to resolve issues pertaining to the three parcels with the defendant met the same fate as Dr. Beebe. CT Page 11699
As to the concept of owelty, the court makes the following observations.
Owelty
In partition proceedings, the court may, if necessary, divide the property into shares of equal value, and fix a lien on-the larger share in favor of party receiving the smaller share, for the difference, such difference usually being referred to as "owelty." Sayers v. Pyland, 161 S.W.2d 769, 772, 139 Tex. 57, 140 A.L.R. 1164. "Owelty" is a pecuniary sum awarded to one party in order to equalize shares of the parties in partition. Chesmorev. Chesmore, Okla., 484 P.2d 516, 518.
The power of a court to require payment of "owelty" in order to effect partition of realty by metes and bounds is subject to the limitation that the requirement of owelty is equitably necessary, that the amount required is fair, and that its payment is not so imposed upon a party so as to be unreasonably burdensome, considering both the condition of the property and the party. Joslin v. Joslin, 6 A.2d 456, 459, 62 R. I. 389.
Ordinarily, "owelty" is effectuated by the award of money to the party receiving the smaller quantum of property in partition proceedings, but it may take by the imposition of the obligation to pay off the encumbrances upon the party receiving the larger portion. Von Herberg v. Von Herberg, 106 P.2d 737, 746, 747,6 Wash.2d 100. Under statute providing that where partition cannot be made equally between the partied according to their respective rights without prejudice to some of them, the court may adjudge compensation to be made by one party to another on account of inequality of partition, "owelty" may be awarded even through the estate divided is composed of several parcels separately awarded rather than of a single parcel, unequally divided in kind. VonHerberg v. Von Herberg, 106 P.2d 737, 746, 747, 6 Wash.2d 100.
The doctrine of "owelty of partition" is applied where it is impossible or impracticable to divide the estate in equal shares, and unequal allotments are, therefore, made subject to a charge upon the greater. "`Owelty of partitions' is a sum paid or secured, in the case of partition in unequal proportions, by him who has received the larger portion to him who has the less, for the purpose of equalizing the portions," quoting 21 Am. Eng. Enc. Law, p. 1179, par. 4. CT Page 11700
The doctrine of owelty is within the equitable powers of the court in partition proceedings. And, although the parties to the partition proceedings do not have an absolute right to receive a share of the land set off to them in kind and pay owelty to equalize the shares, the court may consider the application of the doctrine without regard to an agreement between the parties. It has been stated that, although there are situations where owelty can be a useful, albeit an old-fashioned, device for effecting a completely equitable partition of land, it must function as a catalyst for partition, not as a substitute for it.
A court may require one party who has been allotted a share of greater value than was allotted to another to pay a sum of money to such other, and thus equalize the shares of the respective parties.
The equalization of a partition by the award of owelty should not be resorted to where it is possible to make a fair and equitable division without it. The court must see that the requirement of owelty is equitably necessary, that the amount required is fair, and that its payment is not so imposed upon a party as to be unreasonably burdensome. Thus, it has been said that an unequal division of the premises along with payments of owelty is preferred over a partition sale, and in some decisions the desire of avoiding a sale, if possible, has been given as a reason for making the award.
In their Complaint for Partition dated July 16, 1993, plaintiffs claim:
 1. A partition of the real estate according to the respective rights of the co-owners.
 2. If a sale would better promote the interest of the co-owners, then a sale of the premises and a division of the proceeds after the expense of the sale between the parties according to their respective rights in the real estate.
 3. The appointment of a committee to make such a sale.
In his answer with the special defenses dated December 7, 1993, the defendant asserts special defenses as follows: CT Page 11701
1. The plaintiffs have unclean hands.
 2. Plaintiffs' conduct prior to suit was such that their request should be denied.
 3. Should there be a judgment of partition an accounting and credit to the defendant.
 4. The plaintiffs prior conduct should estop them from the relief they seek.
At the same time, December 12, 1993, the defendant filed a counterclaim and or set off consisting of eight counts. Defendant claims in his counterclaim that:
 1. The plaintiffs in the original complaint be estopped from exercising their rights of partition, and that partition be denied them.
 2. An accounting and credit to the defendant in the original complaint.
 3. That the court consider the "exigencies of this case."
4. Money damages.
5. Punitive damages.
6. Attorney's fees.
7. Exemplary damages.
8. Other equitable relief.
In count one of the counterclaim, the defendant in the original complaint for partition here the counterclaim plaintiff claims:
 1. That the plaintiff in the original complaint for partition failed and refused to live up to joint obligations relative to ownership of the subject real estate, that D. Beebe expended his own funds for joint obligations and seeks reimbursement. CT Page 11702
Count Two
 D. Beebe, again, seeks reimbursement for certain expenditures he claims were joint obligations of the parties.
Count Three
 D. Beebe, again, seeks reimbursement for certain expenditures he claims were joint obligations of the parties.
Count Four
 D. Beebe, again, seeks reimbursement for certain expenditures he claims were joint obligations of the parties.
Count Five
 D. Beebe claims that the plaintiffs in the original complaint engaged in a course of conduct that was tortious, wasteful, deleterious and harmful to the various properties owned by the parties and that D. Beebe has been defamed, libeled and/or slandered.
Count Six
 D. Beebe claims that the plaintiffs in the original action engaged in conduct diminishing the value of the properties.
Count Seven
 D. Beebe claims that the plaintiffs in the original action interfered with the property rights, contractual rights and financial expectancies.
Count Eight
 D. Beebe claims that the conduct of the plaintiffs in the original action has caused him irreparable harm.
As noted, the plaintiffs Dr. Roy Beebe and Florence Mahoney CT Page 11703 together own a total combined interest in the subject premises of 75%. These plaintiffs, during the trial, indicated a desire to have the parcels sold and the proceeds divided. The defendant Attorney Donald Beebe opposed a sale and asks for partition in kind.
There has been no meaningful contact or discussion between the parties for an extended period of time. Dr. Beebe and Ms. Mahoney were desirous of trying to expose the premises for sale or to explore buying each other out. Attorney Beebe would only communicate through Attorney Norton, who never had any authority to resolve any of the issues of dispute. Dr. Roy Beebe and Florence Mahoney did not want to be landlords. This is understandable, mindful that Ms. Mahoney lives out of state, and Dr. Beebe, mindful of his practice, did not want the liability attendant to rental property.
Admittedly, there were strong feelings and differences between the three.
The defendant Donald Beebe, being a landlord in his own right for periods of time after the estates were closed, kept some of the structures rented to the dismay of Dr. Beebe and Florence Mahoney, who balked at expenses and charges incident to the properties.
The defendant claims, by virtue of his counterclaim, that real estate taxes were not timely paid, that the plaintiffs Dr. Beebe and Ms. Mahoney did not acquiesce in getting insurance coverage, that waste was occasioned by not renting the premises.
Donald Beebe also claims in Count 5 that he has been defamed, libeled and slandered. A fiduciary relationship, strictly speaking, does not exist between tenants in common by reason of the mere fact that they are such. 86 C.J.S. Tenancy in Common, Section 17, page 377.
One cotenant is under no duty merely as such to indemnify his cotenant for the destruction of their common property or to procure insurance so indemnifying them. 86 C.J.S. Tenancy in Common, Section 17, page 378. Collette v. Long, 179 Miss. 650,176 So. 528.
The defendant could certainly insure his interest in the properties. He cannot, however, impose a duty on the plaintiffs CT Page 11704 to insure the property.
Dr. Beebe testified that practically all real estate taxes on the various parcels were paid and current.
No duty can be imposed on a cotenant to pay taxes on property since the remedy available to the remaining tenant is to seek an immediate partition which Attorney Beebe never pursued. See Lyonsv. Robbins, 45 Conn. 513, 525.
Reimbursement for any expenditures made by Attorney Beebe, or work performed by his maintenance man who looks after his other real estate, appears to have been done without consent or approval of Dr. Beebe or Ms. Mahoney.
Maintenance tasks at any of the three properties were performed by Mr. Roland Bibeau, an employee or agent of Donald Beebe, who looked after Attorney Beebe's other real estate holdings.
Of more serious consequence, Donald Beebe claims that his siblings Dr. Beebe and Ms. Mahoney have defamed, libeled and slandered him. The court, therefore, sets out the elements of defamation, libel and slander.
Defamation of Character
"Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral. . . ." Prosser and Keeton, The Law of Torts Sec. 111, p. 771 (5th ed. 1984 Supp. 1988); see also Charles Parker Co.v. Silver City Crystal Co., 142 Conn. 605, 611-12, 116 A.2d 440
(1955). Defamation is "that which tends to injure `reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." Prosser, Sec. 111, p. 773. "A prima facie case of defamation is made when the plaintiff demonstrates that: (1) [a] defamatory statement was made by the defendant; (2) [t]he defamatory statement identifies the plaintiff to a reasonable reader; (3) [t]he defamatory statement is published to a third person; and (4) [t]he plaintiff's reputation suffers injury." (Citation omitted.) Slez v. Komarow, 2 CSCR 176, 177 (December 29, 1986, Harrington, J.). CT Page 11705
Libel
"While all libel was once actionable without proof of special damages, a distinction arose between `libel per se' and `libel per quod.'" (Citation omitted.) Battista v. United IlluminatingCo., 10 Conn. App. 486, 491, 523 A.2d 1356 (1987), cert. denied,204 Conn. 802-03 (1987). "A libel per quod is not libelous on the face of the communication, but becomes libelous in light of extrinsic facts known by the recipient of the communication." (Citation omitted.) Id. "When a plaintiff brings an action in libel per quod, he must plead and prove actual damages in order to recover." (Citation omitted.) Id.
On the other hand, libel per se "is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." (Citation omitted.) Id., 491-92. "[A] plaintiff may recover general damages where the defamation in question constitutes libel per se." (Citation omitted.) Id., 492. "`When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.'" Id., quotingUrban v. Hartford Gas Co., 139 Conn. 301, 308, 93 A.2d 292
(1952). "The individual plaintiff is `entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him.'"Battista v. United Illuminating Co., supra, 10 Conn. App. 492, quoting Proto v. Bridgeport Herald Corp., 136 Conn. 557, 571,72 A.2d 820 (1951).
"Whether a publication is libelous per se is a question for the court" and "must be determined upon the face of the article itself." (Citation omitted.) Id.; Charles Parker Co. v. Silver City Crystal Co., supra,142 Conn. 612. "Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Citation omitted.) Battista v. United Illuminating Co., supra,10 Conn. App. 492. To fall within the first category, "the defamatory statement must charge a crime which involves moral turpitude or to which an infamous penalty is attached." (Citation omitted.) Id., 493. "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." (Citations omitted.) Id. In addition, an alleged defamatory statement is actionable without proof of special damage, i.e., it is libelous per se, "if it charges `improper conduct or lack of skill or integrity in one's profession or business and is of such CT Page 11706 a nature that it is calculated to cause injury to one in his profession or business.'" Charles Parker Co. v. Silver CityCrystal Co., supra, 612, quoting Proto v. Bridgeport HeraldCorp., supra, 136 Conn. 566.
Connecticut recognizes a cause of action for libel by innuendo or omission as long as there exists false statements which cause the innuendo. Woodstock v. Journal Publishing Co.,4 Conn. L. Rptr. 192 (June 18, 1991, Dunn, J.), see Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 477 A.2d 1005 (1984) (no action for libel by innuendo of a public figure where statements were true).
Slander
"Slander is an oral defamation of character." D. Wright J. Fitzgerald, Connecticut Law of Torts, Sec. 147 (2d. ed. 1968 Supp. 1982). "An indispensable element of an action of slander is injury to the reputation of the person defamed." (Citation omitted.) Urban v. Hartford Gas Co., supra, 139 Conn. 308. "Because of the casual way in which slander is uttered, an injured plaintiff must allege and prove his actual special damages unless he can show that the slander occurred in one of the . . . categories of slanders per se." Wright, Sec. 147; see also Moriarity v. Lippe, 162 Conn. 371, 382-83, 294 A.2d 326
(1972); Zeller v. Mark, 14 Conn. App. 651, 654, 542 A.2d 752
(1988). "`When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.'" Battista v. United Illuminating Co., supra,10 Conn. App. 492, quoting Urban v. Hartford Gas Co., supra, 308.
 The rule is different, however, when the defamation is actionable per quod. There, the law indulges in no such presumption. For this reason, injury to the reputation must be alleged and proved as an essential link between the slanderous utterance and the special damage which constitutes the basis of recovery in actions per quod. . . . The special damage . . . must be of a material and, generally, of a pecuniary nature. It must result from the conduct of a person other than the defamer or the defamed, and that conduct must be directly caused by the publication of the slander. CT Page 11707
(Citation omitted.) Urban v. Hartford Gas Co., supra,139 Conn. 308.
Slander is "actionable per se where the utterance falsely charges a crime involving moral turpitude or to which an infamous penalty is attached." (Citations omitted.) Moriarty v. Lippe,supra, 162 Conn. 383. "Slander is actionable per se if it charges incompetence or dishonesty in office, or charges a professional person with general incompetence." Miles v. Perry, 11 Conn. App. 584,602, 529 A.2d 199 (1987), citing Proto v. Bridgeport HeraldCorp., supra, 136 Conn. 567; see also Zeller v. Mark, supra,14 Conn. App. 655; Boyne v. O'Keefe, 4 CSCR 182 (January 12, 1989, Flanagan, J.). Slander per se also includes charging a person with having an existing loathsome, contagious disease or charging a woman with being unchaste. Wright, Section 147. "Once the plaintiff has established that the words are false and actionable per se, barring any statutory provision to the contrary, she is entitled under Connecticut law to recover general damages without proof of special damages." Miles v. Perry, supra, 602, citingCharles Parker Co. v. Silver City Crystal, supra, 142 Conn. 612.
Standard of Proof — Public Figure Analysis
"The standard of fault applicable to `private individuals' . . . merely requires the plaintiff to prove a negligent misstatement of fact." Miles v. Perry, supra, 11 Conn. App. 588, citing Rosenblatt v. Baer, 383 U.S. 75, 84,86 S.Ct. 669, 15 L.Ed.2d 597 (1966). "`[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.'" Miles v. Perry, supra, 588, quoting Gertz v. RobertWelch, Inc., supra, 418 U.S. 347. "Thus, if the plaintiff is a public figure, she would need to prove actual malice; . . . but if she is a private individual, she need only prove, by a preponderance of the evidence, negligence in the failure to investigate the facts properly prior to publication." (Citations omitted.) Miles v. Perry, supra, 588-89.
The meaning of "public figure" as defined in Gertz is quoted at length in Miles. See Miles v. Perry, supra, 11 Conn. App. 591. "Whether a defendant is entitled to the protection of the NewYork Times-Gertz Public Figure Rule is a question of law for the court to resolve." Slez v. Komarow, supra, 2 CSCR 177, citingRosenblatt v. Baer, supra, 383 U.S. 88; Harrison v. HartfordCT Page 11708Courant, 4 CSCR 813, 814 (October 26, 1989, Pickett, J.) (an official of an Indian tribe can be characterized as a "public" official).
Defenses and Privilege
"Before a party will be held liable for libel, there must be an unprivileged publication of a false and defamatory statement."Strada v. Connecticut Newspapers, Inc., supra, 193 Conn. 316, citing Letter Carriers v. Austin, 418 U.S. 264, 284,94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). "Truth is an absolute defense to an allegation of libel." Strada v. Connecticut Newspapers, Inc.,
supra, 316, citing Goodrich v. Waterbury Republican-American,Inc., 188 Conn. 107, 112, 448 A.2d 1317 (1982). "Where the `main charge, or gist, of the libel' is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." Strada v. Connecticut Newspapers. Inc.,
supra, 322, quoting Goodrich v. Waterbury Republican-American,
supra, 113.
 `The publication of defamatory words may be under an absolute privilege, or under a qualified or conditional privilege. Under the former there is no liability, although defamatory words are falsely and maliciously published. The class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings, and acts of State.'
(Emphasis omitted.) Irwin v. Cohen, 40 Conn. Sup. 259, 262,490 A.2d 552 (1985, Pickett, J.), quoting Hasset v. Carroll,85 Conn. 23, 35, 81 A. 1013 (1911). "It is only the qualified or conditional privilege that may be abused or lost by malice, improper motive, or bad faith." (Citation omitted.) Irwin v.Cohen, supra, 262.
"There is a `long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy.'" (Citations omitted.) Petyan v. Ellis, 200 Conn. 243, 245-46, 510 A.2d 1337
(1986), quoting Circus Circus Hotels, Inc. v. Witherspoon,99 Nev. 56, 60, 657 P.2d 101 (1983). While the definition of a "judicial proceeding" to which absolute privilege attaches has not been defined very exactly, "`[i]t includes any hearing before CT Page 11709 a tribunal which performs a judicial function.'" Chester v.Willey, 4 Conn. L. Rptr. 205 (June 11, 1991, Hennessey, J.) quoting Petyan v. Ellis, supra, 245-46. "Further, the `privilege extends to every step of the proceeding until final disposition', . . . including preparation of that proceeding." (Citations omitted.) Chester v. Willey, supra, 162. The court inChester v. Willey, found that since the Statewide Grievance Committee (SGC) is a judicial entity and the proceedings conducted by and before the SGC are "judicial proceedings," any statements made during such proceedings are absolutely immune from liability for defamation. Id.; see also Sobocinski v.Statewide Grievance Committee, 215 Conn. 517, 525, 576 A.2d 532
(1990) (SGC is an arm of the court).
The absolute privilege for the publication of defamatory statements to an administrative board acting in a quasi-judicial capacity must be limited to those statements made in connection with those activities of the agency that are judicial or quasi-judicial and does not extend to statements made which are unrelated to such agency's quasi-judicial authority. MacDonald v.Atlantic Airlines, 5 Conn. L. Rptr. 150, 151 (October 11, 1991, Berdon, J.); see also Petyan v. Ellis, supra, 200 Conn. 246. "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." (Citations omitted.) Petyan v. Ellis,
supra, 246. "`The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements.'" (Citations omitted.) Id., quoting Circus Circus Hotels, Inc. v.Witherspoon, supra, 99 Nev. 61.
"For the defense of conditional privilege to attach, a defendant must assert an objective interest sufficiently compelling to warrant protection of an otherwise defamatory communication." Bleich v. Ortiz, 196 Conn. 498, 501, 493 A.2d 236
(1985). "A qualified or conditional privilege arises out of an `occasion,' such as, when one acts in a bona fide discharge of a public or private duty." Miles v. Perry, supra, 11 Conn. App. 594
n. 8, citing Flanagan v. McLane, 87 Conn. 220, 221-22, 88 A. 96
(1913). Despite the assertion of such an interest, a conditional or qualified privilege is defeated if the defendant acts with an improper or unjustifiable motive, i.e., malice, or if the scope or manner of publication exceeds what is reasonable necessary to further the interest. Bleich v. Ortiz, supra, 501, 504; Miles v.CT Page 11710Perry, supra, 594 n. 8; see also Haxhi v. Moss, 25 Conn. App. 16,19-20, 591 A.2d 1275 (1991) (discussion of malice in fact).
"Whether a defamatory communication implicates an interest worthy of protection is a question of law for the trial court to determine, but whether the privilege is nevertheless defeated through its abuse is a question of fact to be decided by the jury." (Citations omitted.) Bleich v. Ortiz, supra,196 Conn. 501. "It is for the court to determine, as a matter of law, whether the defendant made the defamatory statements while acting on an occasion of privilege . . . ." Miles v. Perry, supra,11 Conn. App. 594 n. 8. Pure opinion, fair comment, and matters of public interest may be held to be protected speech. Miles v.Perry, supra, 595. "Under Conn. Practice Book § 164, a privilege in a defamation action is admissible under a general denial . . . ." (Citation omitted.) Slez v. Komarow, supra,2 CSCR 178 (also discussing truth and fair comment); see alsoGoodrich v. Waterbury Republican-American, Inc., supra,188 Conn. 107 (discussion of the defense of truth, which applies to statements of fact, and the privilege of fair comment, which applies to expressions of opinion).
The defendant Donald Beebe has not proved the allegations and claims set forth in his counterclaim by a fair preponderance of credible evidence.
Dr. Beebe and Ms. Mahoney were understandingly concerned and upset about matters pertaining to the administration of their parents' estates where Donald Beebe was the fiduciary and the court draws the allowable inference as to the fees charged and associated with the administration.
Attorney Beebe has not proven or established by any credible evidence that he was defamed, libeled or slandered. The testimony does not show any malice, improper motive or bad faith on the part of the plaintiffs Dr. Beebe and Ms. Mahoney. The plaintiffs did not want to own property jointly with Attorney Beebe nor did they wish to be landlords with the attendant responsibilities.
No grievance, law suit or other administrative action was ever filed by the plaintiffs against the defendant.
Not being able to have any meaningful dialogue with Attorney Beebe over a long period of time as to selling the properties or buying out each other, in desperation the plaintiffs turned to CT Page 11711 partition.
There is no credible evidence that the plaintiffs engaged in a course of conduct leading to driving down the value of the properties, driving out tenants, refusal to pay real estate taxes or insurance or threatening to bulldoze the improvements on the various parcels.
To understand the frustration and animosity or ill feeling between the plaintiffs and the defendant concerning matters pertaining to the estates of Alvah and Florence Beebe and subsequent problems arising after distribution no better exhibit can be resorted to than Exhibit 286A. Dr. Beebe's letter of August 25, 1994 to Attorney Beebe recounting fees as to the fiduciary, counsel for the fiduciary, management fees, etc. and the feelings engendered thereby. Understandably the plaintiffs turned to partition.
Attorney Beebe claims attorney's fees in his counterclaim. There exists no statutory or contractual basis for attorney's fees. Attorney Beebe maintains his right to attorney's fees stems from intentional acts of the plaintiffs. The claim is without merit.
Defendant's counterclaim, in part, is an attempt to seek reimbursement for monies which the plaintiffs never agreed to expend.
Other than the operative words "libel" and "slander" there exists no specific allegations of libel or slander in the counterclaim. The pleading party cannot merely make conclusions of law without alleging facts which would bring a case within any of the recognized grounds for those causes of action Del GrecoRealty Co., Inc. v. Lamoureux, 39 Conn. Sup. 95 (1983). The defendant Donald Beebe at one point also alluded to slander of title.
Slander of Title is a specific statutory cause of action. See Connecticut General Statutes § 47-33j. Reliance on said statute is nowhere pled as required by the Practice Book and no credible evidence was introduced of any of the elements of a statutory slander of title action at trial.
In any event, no evidence was introduced concerning damages from any alleged slander. The burden of proof is on the party CT Page 11712 asserting the cause of action.
The failure to produce evidence of damages results in denial of that cause of action. Expressway Associates II v. Friendly IceCream Corp. of Connecticut, 218 Conn. 474 (1991).
The only witness aside from the defendant Donald Beebe offered to establish defamation or slander was former Probate Court Judge Donald Bloom of the Bozrah Probate Court. Judge Bloom testified that Dr. Beebe was unhappy with the way the estate was handled. Judge Bloom did testify that on one occasion he had a recollection of a comment being made in his court that Donald Beebe disbarment might be sought but he was very unsure of the source. The testimony indicated that Chief Probate Court Administrator Lukens attended one or more of the Beebe estate hearings but his testimony was not offered. Any heated words spoken at the Probate hearing, however, by Dr. Beebe would be absolutely immune from liability on the basis of the legal authority cited above.
Even though the plaintiffs now urge on the court a sale of the properties and a division of the proceeds, and notwithstanding that the plaintiffs, together own interests totaling 75% of the three parcels, the court feels that a partition in kind is still the preferred path to follow realizing, however, that to achieve equality the court must resort to owelty.
The various parcels for the reason stated do not lend themselves to be divided. The defendant Donald Beebe would have the court consider dividing up the parcels and setting out a house and lot from the parcels to try and achieve balance. This is not feasible and would also introduce problems present or prospective of subdivisions.
Mr. Flanagan testified that to try and divide the various parcels, particularly Stockhouse Road, would be guesswork. Manifestly the late Alvah and Florence Beebe intended that their children should have real estate.
The defendant Donald Beebe urges upon the court the dire tax consequences of a sale and the court has considered this in arriving at its decision.
Although the defendant Donald Beebe urges the court, in CT Page 11713 particular to divide Stockhouse Road property, after reflection and after visiting the properties the court is not persuaded.
The fact that the several tracts do not, in the court's opinion, lend themselves to be divided into separate pieces does not the court believes prevent it from setting out an entire parcel to each and resort to owelty.
This was a lengthy trial of several weeks with many exhibits in a sometime difficult atmosphere.
The court has endeavored to very carefully weigh the testimony of all those who appeared and assess the credibility of each.
The court makes the following findings relative to partition.
Fitchville Road — fair market value $103,000.00.
Dudley Street — fair market value $444,000.00.
Stockhouse Road — Fair market value $708,000.00.
Total value of all three parcels $1,255,000.00.
A one quarter interest, therefore, is worth $313,750.00. A one half interest is worth $627,500.00. Because of the reasons stated in describing the premises, the properties do not lend themselves to being divided, therefore, the court to accomplish partition in kind can only set out each parcel to one party and achieve equality through owelty.
Therefore, the court sets out to Florence Mahoney the entire Fitchville Road parcel valued at $103,000.00.
The court sets out to Donald Beebe, the entire Dudley Street parcel valued at $444,000.00.
The court sets out to Dr. Roy Beebe, the entire Stockhouse Road property valued at $708,000.00.
The value of the Dudley Street property being found to be $444,000.00, and Donald Beebe's one quarter interest entitling him to a value of $313,750, he shall pay over to his sister Florence Mahoney the sum of $130,250.00. CT Page 11714
The value of the Stockhouse Road property being found to be $708,000.00 and Dr. Roy Beebe's one half interest entitling him to a value of $627,500.00 he shall pay over to his sister Florence Mahoney the sum of $80,500.00.
The court believes that the owelty payments to Mrs. Mahoney are feasible and possible and not burdensome on Attorney Beebe or Dr. Beebe.
Dr. Beebe, during the trial, had a bank draft of $90,000+ which it was hoped might resolve certain issues.
Attorney Beebe, the evidence indicates, owns extensive income real estate.
Ms. Mahoney resides in Massachusetts and it was indicated she could "use the money."
In the event that the owelty is not paid within three months of the date of this decision, the amount thereof shall be a lien upon the affected parcel in favor of Ms. Mahoney.
The preparation and execution of such deeds as may be required to effect the order of the court shall be completed and lodged for record within 3 months from the date hereof.
Judgment of partition in kind in accordance with the plaintiffs complaint and as set forth above.
Judgment may enter in favor of the plaintiffs on the defendant's counterclaim.
Austin, J.