JAMES B. IRWIN, SR. *v.* GARY I. COHEN ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 038538
LITCHFIELD

Memorandum filed January 18, 1985

*Joseph A. Ruggiero,* for the plaintiff.
*Robert Hall* and *Gary I. Cohen,* for the defendants.

PICKETT, J. The plaintiff, James B. Irwin, Sr., brought this action for defamation against the named defendant Gary I. Cohen, an attorney (hereinafter the defendant), and his partners in the law firm of Carmody & Torrance. The alleged defamatory statements were contained in a letter sent from the defendant to the plaintiff's former counsel, Paul Smith.

The following facts are not in dispute. The defendant was representing Mrs. Irwin in two disputes with her former husband, the plaintiff herein. One dispute was in arbitration, and involved an employment contract between Mrs. Irwin and Integrated Control Systems, Inc., a company of which Mr. Irwin was President. The other dispute involved a motion by Mr. Irwin for termination of child support for the couple's child, James Irwin, Jr.

During the time the defendant was representing Mrs. Irwin, Attorney Smith sent him a letter captioned,

"Irwin v. Irwin."[1] That letter accused Mrs. Irwin of liability for damages caused by an automobile accident in which James Irwin, Jr., was a driver. The automobile was the property of the corporation. In response to that letter, and also captioned "Irwin v. Irwin," the defendant sent Attorney Smith a letter containing the alleged defamatory statements.[2] The plaintiff claims that the defendant, with malice, published defamatory

[1] "Gary I. Cohen, Esquire, Carmody & Torrance, P.O. Box 1110, Waterbury Connecticut 06721. April 18, 1983. Dear Gary: Re: *Irwin* v. *Irwin* On April 12, 1983, James Irwin, Jr., who appears to be back in Litchfield with his mother, came to the corporate offices of IMPAC, took a truck without anyone's permission, went downtown and smashed into the back of another car. He then verbally abused the owner of the other car. Your client, as you know, is a director of IMPAC, and we can assume only one of two things. Either she has given him permission to use corporate property improperly, or she has failed to exercise due parental control of the boy. In any event, we intend to look to her for any damages sustained to corporate assets as a result of the boy's conduct while he is in her custody. Would you kindly advise me as to whether or not we can have some assurances that your client will properly control the boy to prevent him from using the corporate assets or property without permission of the corporation. I await the favor of your reply. Very truly yours, Paul Smith."

[2] "April 27, 1983, Paul Smith, Esq., Old Post Office Square, 8 Church at Main Street, Torrington, CT 06790. Re: Irwin vs. Irwin. Dear Paul: I have sent a copy of your letter of April 18th to Mrs. Irwin. Even before I receive her reaction, however, I must protest on her behalf of the apparently intentional denigrating tone of your letter. Mrs. Irwin has had enough trouble trying to raise her children under the influence of her egomaniacal former husband. For all of their lives, James Irwin has treated his wife and their children as expendable employees. He has been selfish, whimsical, capricious, inconstant and insensitive in his relationships with every member of the Irwin family. He has alienated a loving wife and at one time or another he has alienated each one of their children. This latest slander involving the use of a company vehicle by Jim, Jr., cannot and will not be made the responsibility of Mrs. Irwin. She neither authorized nor condoned his use of a company car. As far as your allegation of improper control of the boy while he is in his mother's legal custody is concerned, please mention to Mr. Irwin that if he spent half as much time establishing a relationship with his son as he has spent trying to harrass, intimidate, annoy and injure the boy's mother, then the child might very well be more responsive to parental guidance. Since I have given you the benefit of my thoughts, I will be pleased to send Mrs. Irwin's response as soon as I have it. Very truly yours, Gary I. Cohen."

remarks about him by allowing both the secretaries of the defendant and Attorney Smith to read the letter.

The defendant asserts two special defenses, that the defamatory statements were substantially true, and that the communication was protected by the doctrine of absolute privilege. The defendants filed this motion for summary judgment premised upon the doctrine of absolute privilege.

Summary judgment shall be rendered when the documents submitted demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Burns* v. *Hartford Hospital,* 192 Conn. 451, 472 A.2d 1257 (1984). Whether the pleadings in the present case raise genuine issues of material fact concerning the nature of the alleged defamatory statements need not be addressed. If the defense of absolute privilege applies, the doctrine of absolute privilege bars an action for defamation. *Hassett* v. *Carroll,* 85 Conn. 23, 81 A. 1013 (1911).

Section 586 of the Restatement (Second), Torts, states that: "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Comment c of § 586 states that the privilege ". . . is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it."

The defendant contends that the communication was in the context of, and had a relation to, an arbitration dispute, a motion to terminate child support, and a threatened action for damages, and therefore, whether

defamatory or not, it is absolutely privileged. The plaintiff acknowledges that the communication may be subject to a privilege, but maintains that any possible privilege was abused and lost by the defendant.

The court announced the principles of privilege in *Hasset* v. *Carroll,* supra, 35, as follows: "The publication of defamatory words may be under an absolute privilege, or under a qualified or conditional privilege. *Under the former there is no liability, although defamatory words are falsely and maliciously published.* The class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings, and acts of State." (Emphasis added.) It is only the qualified or conditional privilege that may be abused or lost by malice, improper motive, or bad faith. Wright & FitzGerald, Connecticut Law of Torts § 158 (2d Ed. 1968). "From earliest times, this state has recognized that the absolute privilege is to be extended for the protection of those participating in judicial proceedings and 'extends to judges, counsel and witnesses.' *Blakeslee & Sons* v. *Carroll,* 64 Conn. 223, 232, 29 A. 473 (1894). The privilege is '. . . founded on public policy, which requires that a judge in dealing with the matter before him, a party in preparing or resisting a legal proceeding, and a witness in giving evidence in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel.' *Kennedy* v. *Hilliard,* 10 Ir. C.L. Rep., 195. . . .' Id. It is clear that this represents the law in a majority of the jurisdictions. Restatement (Second), Torts, § 587." *Magnan* v. *Anaconda Industries, Inc.,* 37 Conn. Sup. 38, 43, 429 A.2d 492 (1980).

If the court determines that the defendant's communication was absolutely privileged, then the defendant is entitled to summary judgment. In deciding whether an absolute privilege exists, courts determine whether

the alleged defamatory statements are sufficiently preliminary to, or during the course of a proposed or continuing judicial proceeding. Annot., 36 A.L.R.3d 1328.

At the time the alleged defamatory communication was made, the defendant was representing Mrs. Irwin in two disputes. The letter from Attorney Smith was captioned "Irwin v. Irwin" and concerned the subject matter of the two on-going disputes between Mr. and Mrs. Irwin. The alleged defamatory communication was contained in a letter captioned "Irwin v. Irwin," and sent in response to, and referred specifically to, Attorney Smith's letter. Therefore, the alleged defamatory communication was sufficiently preliminary to, or during the course of, a proposed or continuing judicial proceeding.

Accordingly, the defendants' motion for summary judgment is granted.