[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are defamation actions brought by two Connecticut attorneys against a professional corporation and two attorneys in Denver. The action is based on two letters signed by one of the Denver attorneys and mailed to several individuals in Connecticut.
The plaintiffs, Samuel Braunstein and Amy Todisco, are Connecticut attorneys. Braunstein served as trustee from 1983 to 1986 of a trust agreement executed by Ruth O. Good. His partner, Amy Todisco, became trustee in 1986, and remained in that capacity until January of 1990, when Ruth O. Good's son, Phillip Good was appointed trustee. The defendants are Hayes Thynne, a professional corporation located in Denver, and two individual attorneys, William Hayes and Michael Thynne, also residents of Denver, who were allegedly retained by Phillip Good in late 1990 to complete an accounting of the trust. The actions by the two plaintiffs have been consolidated.
The first of the two letters from Hayes to Todisco is dated CT Page 1458 April 17, 1991. It acknowledges receipt of various documents that had previously been sent to the Denver law firm regarding the Ruth Good trust, but poses some 23 questions concerning the documents and seeks other information.
A typical query is number 10. "The Prudential-Bache Client Statement for the period of March 31, 1989, reflects a check issued on March 22, 1989, in the amount of $5,000.00, with the notation `per trust agrmt.' Please provide us with an explanation of this withdrawal." The other questions are similar, each asking to be provided "with an explanation" for certain debits, transfers, withdrawals, etc.
Attached to the April 17, 1991 letter was an appendix entitled "Ruth O. Good — Partial List of Actionable Items." This document accuses the plaintiffs of failing to account properly for the assets of the trust; of failing to safeguard and preserve those assets; of making improper investments, of breaching the duty "to act honestly, fairly, independently and impartially;" of forging the settlor's signature on a check, according to information received from the settlor, and of investing in risky and speculative enterprises.
The second Hayes to Todisco letter is dated April 26, 1991, and indicates that his law firm had been "retained to complete an accounting of the events that have transpired since the death of Mrs. Good in December 1982, and to ascertain the present status of the Ruth O. Good trust and Mrs. Good's other assets." Hayes complains that he has not received all the information that he was seeking, but that his firm has advised his clients, the children of the decedent, that, among other things, there had been "a breach of a fiduciary duty" and that the plaintiffs' conduct as trustees "appear to involve intentional or fraudulent wrongdoing." Hayes says he has been retained by his clients "to the pursue legal and equitable remedies available to them" and he also suggests that Todisco "contact [her] your malpractice insurance carrier as a result of the issues raised in this letter."
On July 1, 1991, the plaintiff filed a four count complaint, alleging libel, negligent misrepresentation, and invasion of privacy, based upon these two letters signed by Hayes and addressed to Todisco. Copies of the first letter were sent to Phillip Good, Ruth Good, and an individual named Jack Brunt. Copies of the second letter were sent to Phillip Good, Ruth Good, Jack Brunt, and Vincent Simko. The first three counts are directed to the CT Page 1459 professional corporation and the fourth, to all defendants. The plaintiffs allege in their complaints that the letters were "malicious, false, and defamatory," that they referred to the plaintiffs as "forger[s] of checks and drafter[s] of false and fraudulent documents," and that publication of such letters injured their respective professional and personal reputations.
The defendants filed an answer and special defenses, including that any statements made by the defendants regarding the plaintiffs were true, and that they had both an absolute as well as a qualified privilege.
On August 21, 1991, the settlor and beneficiaries of the trust petitioned the Probate Court for the District of Trumbull, for an order requiring the two plaintiffs to account for their actions as trustees for the period of September 23, 1983 to January 30, 1990. See General Statutes 45(a)-175(b). On September 26, 1991, a hearing was held. The Probate Court declined to issue the order requested on jurisdictional grounds, by a memorandum of decision dated December 3, 1991. The Probate Court concluded that since the trust was established in Florida, the settlor lived in Florida, and the initial corpus of the trust consisted of Florida real estate, the only contact with Connecticut was the fact that the former trustees reside here.
The defendants have now moved (#121 in both cases) for summary judgment on the entire complaint on the grounds that the two letters were absolutely privileged since they were written in preparation for a judicial proceeding. In support of the motions, the defendants submitted the affidavit of Hayes, which states that he was retained by Phillip Good, the current trustee, "to conduct an accounting and pursue any and all legal remedies on behalf of the trust in connection with the accounting." The plaintiffs filed affidavits in which they state that the only proposed judicial proceeding was an accounting by the Probate Court and "claims of forgery, fraudulent conduct, and malpractice are not claims that can be adjudicated by the Probate Court."
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Wadia Enterprises v. Hirschfeld, 224 Conn. 240, 247, 618 A.2d 506 (1992). A material fact is one that will make a difference in the result of a case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, CT Page 1460 578, 573 A.2d 699 (1990). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" Id., quoting State v. Groggin, 208 Conn. 606, 616, 546 A.2d 250 (1988).
"[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.) Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A.2d 334
(1991). However, if the evidence presented is sufficient, it is "not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., supra, 579. In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. Connecticut Bank Trust Co. v. Carriage Lane Associate, supra.
The defendants argue in their motion for summary judgment that the correspondence was transmitted in preparation for a judicial proceeding and that such legal action was instituted at the request of Phillip Good, the trustee. In response, the plaintiff argues that communications must be relevant to the subject of the controversy, that the only proceeding involved was a request for an accounting, and that the statements made in the letters were "clearly unrelated to that judicial proceeding."
A defamation action is based on an unprivileged communication of a false fact that tends to either harm one's reputation by lowering such person in the estimation of the community, or to deter other people from dealing or associating with such person. Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 316,477 A.2d 1005 (1984). "[I]f the alleged defamatory word could not reasonably be construed defamatory in any sense, the matter becomes issue of law for the court." Charles Parker Co., v. Silver City Crystal Co., 142 Conn. 605, 612, 116 A.2d 440 (1955).
"There is a `long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." Petyan v. Ellis, 200 Conn. 243,245-46, 510 A.2d 1137 (1986). "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Id., 246. The Supreme Court has noted that:
"[A judicial proceeding] includes any hearing before a CT Page 1461 tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or `quasi-judicial' in character."
Id., quoting Prosser Keeton, Torts (5th Ed.) 114, pp. 118-19. See also Kelly v. Bonney, 221 Conn. 549, 566, 606 A.2d 693 (1992).
The absolute privilege which is granted to statements made in furtherance of a judicial or quasi judicial proceeding "extends to every step of the proceeding until final disposition." Petyan v. Ellis, supra. However, absolute immunity "`applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding." Magnan v. Anaconda Industries, Inc., 37 Conn. Sup. 38, 45, 429 A.2d 492
(Super.Ct. 1980), rev'd. on other grounds, 193 Conn. 558,479 A.2d 492 (1984), quoting Restatement (Second) Torts 588, comment e. If the defense of absolute privilege precludes liability for defamation, it also applies to other related causes of action, such as an infraction of the right to privacy; Tucker v. Bitonti,34 Conn. Sup. 643, 647, 382 A.2d 841 (Super.Ct. 1977); and intentional or negligent infliction of emotional distress; Petyan v. Ellis, supra, 254-55. The absolute privilege applies when defamatory material is published to individuals sufficiently connected with a proposed proceeding. [53 C.J.S. 73. p. 133.]
In Irwin v. Cohen, 40 Conn. Sup. 259, 490 A.2d 552 (1985, Pickett, J.), the court addressed issues similar to those found in the instant case. In that case, the alleged defamatory statements were found in a letter sent from the defendants to plaintiff's former counsel. Id. The court granted the defendants, motion for summary judgment, concluding that the "communication was sufficiently preliminary to, or during the course of, a proposed, or continuing judicial proceeding, to be absolutely privileged since it was between two attorneys and the letter was captioned with a case name and concerned the dispute between the two parties to the action. Id., 263. Not only was a judicial proceeding contemplated in the present case according to the correspondence, one actually took place, although it was subsequently dismissed for CT Page 1462 in effect forum non conveniens grounds.
In the instant case, an attorney also sent letters to another attorney. The content of the letters indicates that they were in preparation for a proposed judicial proceeding. In the first portion of the first letter, Hayes requested documents and explanations for various transactions. The second portion of the first letter was entitled "Ruth O. Good — Partial List of Actionable Items," and noted that the trustee's records were inaccurate, and listed seven investments which "have resulted in either bankruptcy, complete loss, internal revenue service audit or other disastrous consequences." The second letter stated that the defendants "were authorized by Phillip Good and Ruth Good to retain local Connecticut counsel to pursue legal and equitable remedies available to them: and that "it has now been six months since [the defendants] were retained to complete an accounting. . ." (April 26, 1991 letter from Hayes to Todisco., p. 1-2)
Copies of the first letter were also sent to Phillip Good, Ruth Good, and Jack Brunt. Copies of the second letter were mailed to the aforementioned individuals and Vincent Simko. The Goods were described as clients of the Denver law firm. An affidavit by Hayes indicates that Brunt was an employee of Prudential Securities and a financial advisor to the plaintiffs in connection with investments of the Good trust.
The April 26, 1991 letter states "[b]y copy of this letter, we are also requesting Mr. Brunt to fill-in any missing information or explanations he may have." The April 26, 1991 letter was sent to Vincent Simko, who is described in the Hayes affidavit as a "law partner with Samuel Braunstein during a portion of the time that Mr. Braunstein was a trustee for the Ruth O. Good trust." The April 11, 1991 letter refers to legal fees paid to the firm of "Simko, Elstein Braunstein" and to the firm of "Simko and Elstein" in connection with the Good trust.
Furthermore, the affidavit submitted in support of defendants' motion for summary judgment indicates that as noted above, the letters sent by the defendants were clearly in preparation for the Probate Court hearing and the second letter indicates additional legal action may have been contemplated as well. There is no doubt that Ruth and Phillip Good were sufficiently connected to the judicial proceeding, as they were the settlor and trustee of the trust. CT Page 1463
Both Brunt and Simko were sufficiently connected to the proposed proceeding, and possessed certain information sought by the defendants. The defendants have, therefore, met their burden of proving that the absolute privilege applies to their communications and that they are entitled to judgment as a matter of law. Accordingly, the motions of the defendants for summary judgment are granted in each case because of the absolute privilege extended to statements in furtherance of judicial proceedings.
So Ordered.
Dated at Stamford, Connecticut, this 9th day of February, 1994.
WILLIAM BURKE LEWIS, JUDGE