[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ONMOTION TO STRIKE (DOCKET ENTRY NO. 322)
Before the court is the counterclaim defendant's, Gizella Biro, motion to strike counts one through five and eight through eleven of the counterclaim plaintiffs', Leon C. Hirsch and Turi Josefson, revised counterclaim.
On June 17, 1994 the counterclaim defendant, Gizella Biro (Biro), filed a complaint naming Leon C. Hirsch (Hirsch), Turi CT Page 1492 Josefson (Josefson) and U.S. Surgical Corporation (U.S. Surgical) as defendants. The causes of action enumerated in the complaint included sexual assault against Hirsch, battery against Hirsch and Josefson, eavesdropping against U.S. Surgical and Hirsch, failure to pay overtime wages against all defendants and intentional infliction of emotional distress over the course of Biro's six years of employment with the defendants. On November 7, 1995, Hirsch and Josefson filed a counterclaim against Biro alleging a violation of the federal Racketeer Influenced and Corrupt Organization statute (RICO) (Count One); fraudulent conspiracy to commit extortion (Count Two); defamation (Count Three); false light invasion of privacy (Count Four); intentional infliction of emotional distress (Count Five); vexatious litigation (Counts Six and Seven); common law larceny (Count Eight); breach of oral contract (Count Ten); fraud (Count Eleven); and tortious interference with business expectancy (Count Twelve).
On January 10, 1996, Biro filed a request to revise as to Hirsch and Josefson's counterclaims. Hirsch and Josefson filed objections to Biro's request to revise on January 22, 1996. On August 12, 1996, the court, Thim, J., issued a ruling with respect to Hirsch and Josefson's objections to Biro's request to revise. On September 4, 1996, Hirsch and Josefson filed their revised counterclaims pursuant to the court's ruling.
On September 18, 1996, Biro filed a motion to strike counts one through five and counts eight through eleven of the revised counterclaims. As required by Practice Book § 155, Biro filed a memorandum in support of the motion to strike. Biro then filed a revised motion to strike the same counts on September 23, 1996, which motion is now before the court. On October 28, 1996, Hirsch and Josefson filed a memorandum in opposition to Biro's revised motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v.United Technologies Corp. , 240 Conn. 576, 580, 693 A.2d 293
(1997). "[T]he moving party admits all facts well pleaded." RKConstructors. Inc. v. Fusco Corp. , 231 Conn. 381, 383 n. 2,650 A.2d 153 (1994). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation CT Page 1493 marks omitted.) Faulkner v. United Technologies Corp. , supra,240 Conn. 580. "If the well pleaded facts fail to support a cause of action, the motion to strike [is] properly granted."Murray v. Commissioner of Transportation, 31 Conn. App. 752, 754,626 A.2d 1328 (1993).
I. Count One
In count one of the revised counterclaim, Hirsch and Josefson allege a violation of the Racketeer Influenced and Corrupt Organizations statute (RICO), 18 U.S.C §§ 1961, et seq.
Biro argues that count one should be stricken because "none of the alleged conduct purportedly constituting `racketeering activity' are `chargeable under State law and punishable by imprisonment for more than one year.'" (Biro's Memorandum, p. 1.) Biro contends that the allegations against her fall into two categories: (1) uttering and publishing false and defamatory statements which cast Hirsch and Josefson in a false light before the public and (2) sending or causing letters to be sent through the mail to, or initiating telephone conversations with, defense counsel detailing claims. (Biro's Memorandum, pp. 4-5.) Biro insists that this conduct is privileged and cannot be chargeable under state law as there is an absolute privilege for statements made in judicial proceedings. (Biro's Memorandum, p. 5.)
Hirsch and Josefson argue that "Biro and her co-conspirators have violated certain state and federal statutes covered under the definition of `racketeering activity' pursuant to Title 18 U.S.C. § (1)(A) and (B) through their attempts to extort millions of dollars from Hirsch and Josefson by threatening to publicly defame them through false and malicious allegations of sexual misconduct." (Hirsch and Josefson's Memorandum, p. 9.) In addition, Hirsch and Josefson insist that Biro's defamatory statements were not made in connection with any judicial or quasi-judicial proceeding nor were the statements made in connection with any step in such a proceeding. Therefore, Hirsch and Josefson argue that the motion to strike should be denied because the statements are not subject to an absolute privilege.
The court concludes that the motion to strike count one of Hirsch and Josefson's counterclaim should be denied because Hirsch and Josefson have alleged facts sufficient to support their RICO claim. "`To state a [RICO] claim plaintiffs must allege the conduct of an enterprise through a pattern of racketeering activity. . . . A pattern of racketeering activity CT Page 1494 is a series of criminal acts as defined in § 1961(1), and the enterprise is generally a group of persons associated together for a common purpose of engaging in a course of conduct. . . .'" (Citations omitted.) Metro Square LLC v. Pettingill, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 148987 (April 3, 1997, D'Andrea, J.), quoting Proctor Gamble v. Big Apple Industrial Buildings Inc., 879 F.2d 10, 14-15
(2nd Cir. 1989), cert. denied, 493 U.S. 1022, 110 S.Ct 723,107 L.Ed.2d 743 (1990).
Hirsch and Josefson allege that "Kale and Biro formed an enterprise as that term is defined in 18 U.S.C. § 1961, which engaged in activities . . . in furtherance of the conspiracy . . . ." (Revised Counterclaims, Count One, ¶ 17.) Although Biro argues that based on 18 U.S.C. § 1961 (1)(A) Hirsch and Josefson have not alleged a pattern of "racketeering activity" which is chargeable under State law and punishable by imprisonment for more than one year, Hirsch and Josefson have set forth the necessary allegations to support a pattern of "racketeering activity" under 18 U.S.C. § 1961 (1)(B).[1] Hirsch and Josefson allege that the "purpose and object of this combination or conspiracy was to compel the plaintiffs, . . ., to pay Kale and Biro large sums of money in return for their refraining from such malicious and unlawful conduct." (Revised Counterclaims, Count One, ¶ 7.) Hirsch and Josefson also allege that in order to perpetrate the conspiracy "the enterprise used or caused the use of the United States mail for correspondence directed to Hirsch, threatening the commencement of litigation against Hirsch for sexual assault, intimidation, . . . ." (Revised Counterclaims, Count One, ¶ 11.) Hirsch and Josefson further allege that "the enterprise further transmitted or caused to be transmitted interstate communications by wire or telephone . . . ." (Revised Counterclaims, Count One, ¶ 19.) Hirsch and Josefson then allege that the actions of the enterprise constitute: attempted extortion as defined under 18 U.S.C. § 1951;[2] mail fraud as defined under 18 U.S.C. § 1341;[3] and wire fraud as defined under18 U.S.C. § 1343.[4] (Revised Counterclaims, Count One, ¶ 21-23). The court finds that the facts alleged by Hirsch and Josefson are sufficient to state a RICO claim.[5]
Biro, relying on Petyan v. Ellis, 200 Conn. 243,510 A.2d 1337 (1986.), argues that the statements which Hirsch and Josefson allege were "false and defamatory" and which form the basis for their RICO claim are protected by an absolute privilege because they were made in connection with judicial proceedings. CT Page 1495 (Biro's Memorandum, p. 5.) The court concludes that Biro's statements are not subject to an absolute privilege relying on the following authorities.
"The class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings and acts of State." Mulshine v. Knight, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 533251 (May 21, 1996, Wagner, J.) (16 Conn. L. Rptr. 596.), quoting Irwin v. Cohen, 40 Conn. Sup. 259, 262,490 A.2d 552 (1985). Petyan does not support Biro's claim because in that case the privilege was applied to remarks made in a judicial proceeding. See Petyan v. Ellis, supra, 200 Conn. 243. "While statements made during the course of judicial or administrative proceedings are privileged for the purpose of allowing candor to the court or to the tribunal," the statements at issue in count one were not made in the course of a judicial or administrative proceeding and, therefore, are not absolutely privileged.Mulshine v. Knight, supra, 16 Conn. L. Rptr. 596. Also, although the statements may have been made during the period of time when Biro was working with her attorney and preparing to file suit, there are allegations that the statements at issue were published and thus not protected by the attorney-client privilege. Further, count one alleges that Biro began making statements that were "false and defamatory" in May of 1994. (Revised Counterclaims, Count 1, ¶ 9.) Biro did not file this lawsuit until June 17, 1994, lending further support to the conclusion that the statements were not made in connection with judicial proceedings. Therefore, the motion to strike count one is denied because Hirsch and Josefson have alleged facts sufficient to support their RICO claim and Biro's statements are not protected by an absolute privilege.
II. Count Two
Biro argues that count two of the revised counterclaim should be stricken because Hirsch and Josefson fail to state a claim for fraudulent conspiracy to commit extortion as the allegations do not allege any illegal conduct or objective underlying the purported conspiracy. (Biro's Revised Motion to Strike, p. 2.) Further, Biro argues that there is no allegation that the conspiracy was ever acted upon or that any money was paid to any of the alleged conspirators or their agents. (Biro's Memorandum, p. 6.) Hirsch and Josefson counter that the motion to strike count two should be denied because the elements needed CT Page 1496 to state a legally cognizable claim for conspiracy to commit extortion have been sufficiently plead. (Hirsch and Josefson's Memorandum, p. 14.)
"The contours of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Marshak v. Marshak,226 Conn. 652, 665, 628 A.2d 964 (1993). Construing count two in the light most favorable to the pleader, Hirsch and Josefson have alleged all of the elements necessary to state a legally sufficient claim for conspiracy.
First, Hirsch and Josefson evidence a combination of two or more persons by alleging that "Biro entered into a combination or conspiracy with Eva Kale . . . and Cornelia Ford . . . ." (Revised Counterclaims, Count Two, ¶ 6.) Second, Hirsch and Josefson portray a criminal or unlawful act by alleging that the "purpose and object of this combination or conspiracy was to compel the plaintiffs, . . ., to pay Kale and Biro large sums of money in return for their refraining from such malicious and unlawful conduct." (Revised Counterclaim, Count Two, ¶ 7.) Third, Hirsch and Josefson evidence an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object by alleging that "[i]n furtherance of this combination and conspiracy . . . Biro uttered and published . . . statements of and concerning the plaintiffs and their conduct with respect to Biro during the period of her employment which were false and defamatory." (Revised Counterclaim, Count Two, ¶ 9.) Finally, Hirsch and Josefson indicate that damages resulted from the actions of Biro, Kale and Ford by alleging that "the plaintiffs have suffered reputational injury as a result of the fraudulent combination or conspiracy alleged herein." (Revised Counterclaim, Count Two, ¶ 17.) Therefore, Hirsch and Josefson have pleaded all of the elements necessary to state a legally sufficient claim for fraudulent conspiracy to commit extortion, and Biro's motion to strike count two of the revised counterclaim is denied.
III. Count Three
In count three, Hirsch and Josefson allege that Biro defamed them in that she "uttered and published statements of and CT Page 1497 concerning the counterclaim plaintiffs and their conduct with respect to Biro during the period of her employment which were false and defamatory." (Revised Counterclaim, Count Three, ¶ 6.) Further, Hirsch and Josefson allege that Biro's attorney "held a press conference, attended by numerous media representatives, in which said attorney and agent stated that Biro was bringing a lawsuit against the plaintiffs, and detailed Biro's claims against the plaintiffs." (Revised Counterclaims, Count Three, ¶ 7.) Hirsch and Josefson allege, also, that "said attorney and agent of Biro had numerous other conversations before and after the press conference with media representatives and many other people in which she repeated, supplemented and expanded her press conference allegations." (Revised Counterclaim, Count Three, ¶ 7.) In addition, Hirsch and Josefson allege that several newspapers and various other publications published articles outlining the allegations made by Biro. (Revised Counterclaim, Count Three, ¶ 8-22.)
Biro argues that count three of the revised counterclaims should be stricken because "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." Petyan v. Ellis, 200 Conn. 243, 245-46,510 A.2d 1337 (1986). Therefore, Biro insists that the motion to strike count three which sounds in defamation should be granted because her statements were made in the course of judicial proceedings and are therefore absolutely privileged. (Biro's Memorandum, p. 7.) Hirsch and Josefson counter that Biro's statements were not confined to the pleadings filed with the court nor to statements made in the course of any judicial or quasi-judicial proceeding. (Hirsch and Josefson's Memorandum, pp. 14-15.) Further, Hirsch and Josefson argue that comments made to the media are not made in a judicial or quasi-judicial proceeding. (Hirsch and Josefson's Memorandum, p. 15.) Therefore, Hirsch and Josefson contend that the motion to strike count three should be denied because "Biro is seeking to expand the law set forth in Petyan
far above and beyond what the case law contemplated and what would be acceptable without a gross abuse of this narrowly defined privilege." (Hirsch and Josefson's Memorandum, p. 15.)
The court finds that Hirsch and Josefson have alleged sufficient facts for a cause of action for defamation. "`To find that the defendants were liable for defamation . . . the [court] was required to find that the defendants published false statements that harmed the defendant, and that the defendants CT Page 1498 were not privileged to do so.'" Torosyan v. Boehringer IngelheimPharmaceuticals, Inc. 234 Conn. 1, 27, 662 A.2d 89 (1995), quoting Kelley v. Bonney, 221 Conn. 549, 563, 606 A.2d 693
(1992). Hirsch and Josefson allege that "Biro uttered and published, . . ., statements of and concerning the plaintiffs and their conduct with respect to Biro during the period of her employment which were false and defamatory." (Revised Counterclaim, Count Three, ¶ 6.) Hirsch and Josefson further allege that "[t]he plaintiffs have been injured in their reputation by Biro's false and defamatory publications." (Revised Counterclaims, Count Three, ¶ 24.)
In addition, Biro's statements were not made in the course of judicial proceedings and are, therefore, not protected by the absolute privilege. As stated in the discussion regarding count one, "[t]he class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings and acts of State." Mulshine v. Knight, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 533251 (May 21, 1996, Wagner, J.) (16 Conn. L. Rptr. 596.), quoting Irwin v. Cohen, 40 Conn. Sup. 259, 262,490 A.2d 552 (1985). "While statements made during the course of judicial or administrative proceedings are privileged for the purpose of allowing candor to the court or to the tribunal," the statements at issue in count three were not made in the course of a judicial or administrative proceeding and they are not absolutely privileged. Mulshine v. Knight, supra, 16 Conn. L. Rptr. 596. "In determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published."Kelley v. Bonney, supra, 221 Conn. 575. "Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." Id., 576.
"Publication to the media of material that the media was independently entitled to view, however, cannot provide a basis for a claim of defamation." Kelley v. Bonney, supra,221 Conn. 576. Practice Book § 211B provides in relevant part: "Except as otherwise provided in this section . . . the court shall not order that the public, which may include the news media, be excluded from any portion of a proceeding and shall not order that any files, affidavits, documents, or other materials be sealed or their disclosure limited." Hirsch and Josefson, however, allege statements that were broader than those made in the pleadings filed with the court. Accordingly, the motion to strike count three of the revised counterclaim is denied as Hirsch and Josefson CT Page 1499 have alleged sufficient facts for a cause of action for defamation and Biro's statements are not protected by the absolute privilege.
IV. Count Four
Count four alleges that Biro "uttered and published, or caused to be uttered and published, statements of and concerning the plaintiff and their conduct with respect to Biro during the period of employment which were untrue and which cast the plaintiffs in a false light in front of the public." (Revised Counterclaim, Count Four, ¶ 6.) In addition, Hirsch and Josefson "incorporate by reference the allegations first made in Count Three of their Revised Counterclaims to the effect that several newspapers and various other publications published articles outlining the allegations made by the counterclaim defendant in her lawsuit against the counterclaim plaintiffs." (Biro's Memorandum, pp. 7-8; Revised Counterclaims, Count Four, ¶ 7-22.)
Biro argues that "Count Four adds nothing in the way of additional substantive allegations other than those allegations first made in Count Three." (Biro's Memorandum, p. 8.) Biro insists that the motion to strike count four should be granted because, as in count three, her statements were made in the course of judicial proceedings and are therefore absolutely privileged. (Biro's Memorandum, p. 7.) Hirsch and Josefson respond that they have asserted the necessary allegations for a false light invasion of privacy claim. (Hirsch and Josefson's Memorandum, p. 17.)
Hirsch and Josefson argue that the motion to strike the fourth count should be denied because "Biro by and through her attorney, held a press conference attended by numerous media representatives, wherein Biro made or caused to be made baseless and inflammatory allegations which would be highly offensive to a reasonable person and which placed the defendants in a false light." (Hirsch and Josefson's Memorandum, p. 17.) "These major representations of Hirsch and Josefson's character, history, activities or beliefs were such that serious offense may reasonably be expected to be taken by reasonable persons in their position." (Hirsch and Josefson's Memorandum, p. 17.) Hirsch and Josefson insist that the privilege set forth in Petyan does not protect such comments. (Hirsch and Josefson's Memorandum, p. 17.)
Biro relies on Petyan to strike count four on the ground that her statements are absolutely privileged; however, Biro's statements are not protected by the absolute privilege for the CT Page 1500 reasons stated in the discussions regarding counts one and three. Further, Hirsch and Josefson have alleged the elements necessary for a false light invasion of privacy claim. In order to establish invasion of privacy by false light, the plaintiff must show (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) that the actor had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Jonap v. Silver, 1 Conn. App. 550, 557,474 A.2d 800 (1984). "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id. Hirsch and Josefson allege that "Biro knew these statements and representations concerning the plaintiff to be false." (Revised Counterclaims, Count Four, ¶ 23.) In addition, Hirsch and Josefson allege that several newspapers and various other publications published articles outlining the allegations made by Biro.[6] (Revised Counterclaims, Count Four, ¶ 7-22.) Accordingly, the motion to strike count four of the revised counterclaim is denied.
V. Count Five
Count five of the revised counterclaim alleges intentional infliction of emotional distress. Hirsch and Josefson allege that Biro's conduct, as alleged in count one (paragraphs one through sixteen) was "extremely outrageous, and was undertaken with the purpose and with the effect of inflicting severe emotional distress on the plaintiffs." (Revised Counterclaim, Count Five, ¶ 17.) Biro argues that her conduct does not qualify as "extreme and outrageous." (Biro's memorandum, p. 9.) Further, Biro insists that even if her comments qualified as "extreme and outrageous," they are absolutely privileged under Petyan and therefore she cannot be held liable. (Biro's Memorandum, p. 9.) Hirsch and Josefson respond that if a party alleges sufficient facts such that reasonable minds could differ, regarding the issue of whether a person's conduct was sufficiently "extreme and outrageous" and whether the party's resulting emotional distress was sufficiently "severe," then it becomes a question of fact for the jury and cannot be addressed in a motion to strike. (Hirsch and Josefson's Memorandum, p. 18.) In addition, Hirsch and Josefson insist that "Biro's comments and statements were not made in the course of a judicial or quasi-judicial proceeding and, CT Page 1501 therefore, the privilege as set forth in Petyan does not apply." (Hirsch and Josefson's Memorandum, p. 18.)
Further, for the reasons stated in the discussions regarding counts one and three, Biro's comments are not absolutely privileged. Second, "[e]xtreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress . . . Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice." Taylor v.Phyllis Bodel Childcare Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 377237 (July 10, 1996, Licari, J.). "`Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" Id., quoting DeLaurentis v. New Haven, 220 Conn. 225, 267,597 A.2d 807 (1991). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v. Eastman Kodak Company,42 Conn. Sup. 17, 18, 597 A.2d 807 (1991).
In this case, count five alleges that Biro has uttered and published statements regarding Hirsch and Josefson and their conduct toward her during her employment which were false and defamatory and which cast them in false light. (Revised Counterclaim, Count 5, ¶ 9 and ¶ 11.) Hirsch and Josefson argue that this conduct was "extreme and outrageous." (Hirsch and Josefson's Memorandum, p. 19.) Biro states that such conduct standing alone does not qualify as "extreme and outrageous." (Biro's Memorandum, p. 9.) Reasonable minds could differ on this issue and as a result it should be decided by the jury and not by the court on a motion to strike. Accordingly, the motion to strike count five of the revised counterclaim is denied.
VI. Counts Eight — Eleven
Biro argues that counts eight (Common Law Larceny), nine (Breach of Oral Contract), ten (Conversion) and eleven (Fraud) "allege actionable conduct which purportedly occurred in June 1992." (Biro's Revised Motion to Strike, p. 2.) Biro further argues that Hirsch and Josefson "failed to raise the alleged claims until on or after November 6, 1995." (Biro's Revised Motion to Strike, pp. 2-3.) Therefore, Biro insists that "each CT Page 1502 of these counts is barred by the applicable statute of limitations and should be stricken." (Biro's Revised Motion to Strike, p. 3.)
Hirsch and Josefson counter that "a claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike." (Hirsch and Josefson's Memorandum, citing Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993)). In addition, Hirsch and Josefson insist that the motion to strike counts eight through eleven must be denied because the allegations do not qualify as exceptions to the above stated rule. (Hirsch and Josefson's Memorandum, pp. 20-21.)
Biro has not plead as a special defense that Hirsch and Josefson's action was barred by a statute of limitations, but instead seeks to have counts eight through eleven of the counterclaim stricken prior to pleading such a special defense. "`A claim that an action is barred by . . . the statute of limitations must be pleaded as a special defense, not raised by a motion to strike.'" Girard v. Weiss, 43 Conn. App. 397, 415,682 A.2d 1078 (1996), quoting Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993). The Forbes court also concluded that there are two exceptions to that holding. Forbes v. Ballaro, supra, 31 Conn. App. 239.
The first exception is applicable when "[t]he parties agree that the complaint sets forth all the facts pertinent to the question as to whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer." Id., 239. Hirsch and Josefson contend that the revised counterclaims do not allege all of the relevant facts necessary to determine whether the claims are barred by the applicable statute of limitations. (Hirsch and Josefson's Memorandum, pp. 21-22.) Thus, the first exception does not apply because the parties clearly do not agree that the complaint sets forth all the necessary facts. The second exception is applicable when "a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced." Forbes v. Ballaro, supra,31 Conn. App. 239-40.
The second exception does not apply because counts eight through eleven allege common law causes of actions. Therefore, the motion to strike counts eight through eleven of the revised counterclaim are denied. CT Page 1503
Based upon the foregoing reasons, the court has denied the counterclaim defendant's motion to strike counts one through five and eight through eleven of the revised counterclaim.
SKOLNICK, J.