[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 129)
Before the court is the defendant's Motion for Summary Judgment as to the First, Second, Fifth and Sixth Counts of the plaintiff's second amended complaint of March 21, 1997. This complaint alleges that on March 8, 1995, the defendant, William Barnes, a partner at the defendant law firm, Rosenstein Barnes, published a letter to the plaintiff, Brenda Smith, and to the Board of Directors of Bridgeport Futures Initiative, Inc. ("BFI"), which letter contained false and defamatory statements concerning the plaintiff and the plaintiff's performance as President of BFI. (Defendant's Exhibit A.) The complaint alleges further that the letter was published with improper and unjustifiable motives,[1] and that on March 10, 1995, as a result of the publication of the defamatory letter, the plaintiff's employment at BFI was terminated by the board of directors.
Thereafter, the plaintiff commenced this action alleging, inter alia, defamation and tortious interference with a contract or beneficial relationship. On November 1, 1999, the defendants filed this motion for summary judgment on the ground that the alleged defamatory statements were protected by an absolute privilege. The defendants have submitted a memorandum in support of the motion and the plaintiff has submitted a memorandum in opposition thereto. The defendants have also submitted a reply memorandum.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Alvarez v. New HavenRegister, Inc., 249 Conn. 709, 714, 735 A.2d 306 (1999). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v. Double ACT Page 5373Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999).
 A Defamation
The defendants argue that because the alleged defamatory statements were published preliminary to proposed judicial proceedings, they are absolutely privileged and cannot serve as the basis for a defamation claim. The defendants contend that in March of 1995, Stanley Bernard, Katrina Scott-George and Gloria Miranda, associate directors at BFI (hereinafter the associate directors), retained the defendants to represent them with regard to an employment dispute with BFI. The defendants claim that on March 8, 1995, Barnes, in his representative capacity, sent a letter to the plaintiff and members of the board of directors of BFI to inform them of the associate directors' dissatisfaction with the work conditions at BFI and their plans to resign. The defendants argue that the letter set forth specific facts supporting the associate directors' assertions that the plaintiff created an intolerable work environment at BFI. The defendants further argue that because the associate directors construed their resignations as actionable constructive discharges, the March 8, 1995 letter threatened litigation if their demands for adequate compensation packages were not met. Moreover, the defendants contend that the lawsuit was not commenced because the plaintiff's termination by the board of directors of BFI before the effective date of the associate directors' resignations resolved the employment dispute.
In support of the defendants' motion, Barnes has submitted an affidavit affirming that he intended the letter to represent and advocate the positions of his clients. Moreover, Barnes affirms that the letter was sent in good faith and upon serious consideration of a lawsuit.
In response, the plaintiff argues that there is a genuine issue of fact as to whether the alleged defamatory statements are privileged. Specifically, the plaintiff argues that the defendants should not benefit from the absolute privilege because the statements were neither predicated upon a good faith contemplation of judicial proceedings nor relevant to any proposed action. The plaintiff contends that at the time the defamatory statements were published, litigation could not have been seriously contemplated because the associate directors were still employed at BFI. Alternatively, the plaintiff argues that CT Page 5374 if the statements are subject to a privilege, it should be a conditional or qualified privilege which, unlike absolute privilege, may be lost by evidence of malice, improper motive or bad faith.
The plaintiff has submitted an affidavit in opposition to the defendants' motion in which she avers that the March 8, 1995 letter contained false statements and, thus, could not have been made with a serious and good faith belief that litigation would commence in the future. (See Plaintiff's Exhibit C.) The plaintiff further claims that she did not constructively discharge the associate directors. Rather, she asserts that she treated the associate directors with respect and fairness. The plaintiff also avers that during her tenure as president, BFI was not in decline; to the contrary, she affirms that she received high performance evaluations. Moreover, the plaintiff argues that she was terminated from her employment at BFI because of the defendants' publication of the false and irrelevant statements.
"To find that the defendants were liable for defamation . . . the [court] [is] required to find that the defendants published false statements that harmed the [plaintiff], and that the defendants were not privileged to do so." (Internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., 234 Conn. 1, 27, 662 A.2d 89 (1995). "Privilege is an affirmative defense in a defamation action and must, therefore, be specially pleaded by the defendant. . . . Connecticut recognizes two types of privilege: absolute privilege and conditional privilege." (Citation omitted; internal quotation marks omitted.) Menge v. Cafero, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 128522 (January 9, 1995, Karazin, J.). "The effect of an absolute privilege in a defamation action is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Kelley v. Bonney, 221 Conn. 549, 565,606 A.2d 693 (1992). "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) Petyan v.Ellis, 200 Conn. 243, 246, 510 A.2d 1337 (1986).
"The court announced the principles of privilege in Hassetv. Carroll . . . as follows: The publication of defamatory words may be under an absolute privilege, or under a qualified or conditional privilege. Under the former there is no liability,CT Page 5375although defamatory words are falsely and maliciously published.
The class of absolutely privileged communications is narrow, and practically limited to legislative and judicial proceedings, and acts of State. . . . It is only the qualified or conditional privilege that may be abused or lost by malice, improper motive, or bad faith. . . . From earliest times, this state has recognized that the absolute privilege is to be extended for theprotection of those participating in judicial proceedings andextends to judges, counsel and witnesses. . . . The privilege is . . . founded on public policy, which requires that a judge in dealing with the matter before him, a party in preparing or resisting a legal proceeding, and a witness in giving evidence in a court of justice, shall do so with his mind uninfluenced by the fear of an action for defamation or a prosecution for libel. . . . It is clear that this represents the law in a majority of the jurisdictions." (Citations omitted; emphasis added; emphasis in original; internal quotation marks omitted.)Irwin v. Cohen, 40 Conn. Sup. 259, 262, 490 A.2d 552 (1985).
"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communicationspreliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." (Emphasis added.) 3 Restatement (Second), Torts § 586 (1977). Prelitigation communications are absolutely privileged "only when the communication has somerelation to a proceeding that is contemplated in good faith andunder serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." (Emphasis added.) 3 Restatement (Second), supra, § 586, comment (e). "The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communicationspreliminary to the proceeding." (Emphasis added.) 3 Restatement (Second), supra, § 586 (1977), comment (a).
"If the court determines that the defendant's communication was absolutely privileged, then the defendant is entitled to summary judgment. In deciding whether an absolute privilege exists, courts determine whether the alleged defamatory statements are sufficiently preliminary to, or during the course of a proposed or continuing judicial proceeding." Irwin v.Cohen, supra, 40 Conn. Sup. 262-63; see also Wilkinson v.CT Page 5376Schoenhorn, Superior Court, judicial district of Hartford at Hartford, Docket No. 565559 (March 24, 1999, Fineberg, J.) (stating that an absolute privilege applies to statements made in contemplation of judicial proceedings). The privilege reflects a "policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." 3 Restatement (Second), supra, § 586, comment (a).
The absolute privilege protecting attorneys from liability for the publication of prelitigation communications, commonly referred to as the "litigation privilege" has been adopted in several jurisdictions. See Samson Investment Co. v. Chevaillier, 1999 Okla. 19, 988 P.2d 327 (1999); Kittler v. Eckberg, Lammers,Briggs, Wolff Vierling, 535 N.W.2d 653 (Minn.Ct.App. 1995);Woodruff v. Trepel, 125 Md. App. 381, 725 A.2d 612 (Md.Ct.Spec.App. 1999); Rubin v. Green, 4 Cal.4th 1187, 847 P.2d 1044,17 Cal.Rptr.2d 828 (1993); Harris v. NCNB, 85 N.C. App. 669,355 S.E.2d 838 (N.C.Ct.App. 1987); Rady v. Lutz, 150 Wis.2d 643,444 N.W.2d 58 (Ct.App. 1989). The determination of whether a defamatory communication is privileged is a question of law for the court to decide. See Bleich v. Ortiz, 196 Conn. 498, 501,493 A.2d 236 (1985). Specifically, "[w]here the facts and circumstances under which a defamatory publication was made are undisputed, the question of privilege is a matter of law." (Internal quotation marks omitted.) Nguyen v. Proton TechnologyCorp., supra, 69 Cal.App.4th 147.[2]
In California, the courts have held that a prelitigation statement is protected by the litigation privilege of Civil Code § 47(b)[3] when the statement is made in connection with a proposed litigation that is contemplated in good faith and under serious consideration. See Aronson v. Kinsella, 58 Cal.App.4th 254,262, 68 Cal.Rptr.2d 305, 310 (Cal.Ct.App. 1997). "The privilege has been broadly construed to apply to demand letters and prelitigation communications by an attorney. . . . Although originally enacted with reference to defamation actions alone . . . the privilege has been extended to any communication, whether or not it is a publication, and to all torts other than malicious prosecution." (Citation omitted; emphasis in original; internal quotation mars omitted.) Knoell v. Petrovich, 76 Cal.App.4th 164,90 Cal.Rptr.2d 162, 165 (Cal.Ct.App. 1999). "[T]he usual formulation [for the litigation privilege] is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of litigation; and (4) that [has] some connection or logical relation to the action. . . . CT Page 5377 The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some legal relation to, the action, i.e., that it not be extraneous to the action." (Citation omitted; internal quotation marks omitted.) Sacramento Brewing Co., Inc. v. Desmond, Miller Desmond, 75 Cal.App.4th 1082, 89 Cal.Rptr.2d 760, 763 (Cal.Ct.App. 1999). "The privilege is denied to any participant in legal proceedings only when the matter is so palpably irrelevant to the subject matter that no reasonable man can doubt its irrelevancy and impropriety." (Internal quotation marks omitted.) Nguyen v. Proton Technology Corp., supra, 69 Cal.App.4th 149.
In Aronson v. Kinsella, supra, 58 Cal.App.4th 270, the California Court of Appeals held that because the alleged defamatory letter was a classic prelitigation demand letter, it was absolutely privileged. Indeed, that court stated that the letter "was written by an attorney on a potential party's behalf to another potential party to the litigation. It set out the objectionable statements, the reasons why they were objectionable and the legal basis which would support litigation. It made specific demands and threatened legal action if the demands were no met." Id. The court further stated that "[t]his classic prelitigation demand letter is precisely the type of statement that the litigation privilege is intended to protect since it represents the first step toward litigation and the purpose of the litigation privilege is to provide the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (Internal quotation marks omitted.) Id. The court finds California's analysis and application of the litigation privilege persuasive.
In the present case, the plaintiff's assertions that there are genuine issues of material fact as to whether Barnes could have believed in good faith that litigation might be commenced in the future are not supported by the record or the evidence presented by the plaintiff. "[E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc.v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506 (1992). Here, it is undisputed that the March 8, 1995 letter informed the plaintiff and members of the board of directors of BFI that the associate directors retained the defendants to represent them in an employment dispute with BFI. It is also undisputed that the letter informed the plaintiff and the board of directors of the CT Page 5378 associate directors' resignations. Indeed, it is undisputed that the letter asserted that the associate directors considered themselves as being constructively discharged.[4] Furthermore, it is undisputed that the letter demanded that the associate directors receive adequate compensation packages and threatened a lawsuit, asserting claims for wrongful termination and intentional infliction of emotional harm, if their demands were not met. (See Defendants' Exhibit A.) The court is unpersuaded by the plaintiff's averment that the associate directors could not have seriously considered litigation because she treated them with fairness and respect. The court finds that the plaintiff's assertions are in the nature of a defense to a constructive discharge action and are not indicative of whether litigation was contemplated in good faith and under serious consideration by the defendants.
Based upon the record, the court concludes that litigation was contemplated in good faith and upon serious consideration. The plaintiff has not presented this court with a factual predicate sufficient to conclude otherwise. Therefore, the March 8, 1995 letter would appear to be a classic prelitigation demand letter, published in good faith and upon serious consideration of litigation. As such, it is absolutely privileged.[5] See Aronsonv. Kinsella, supra, 58 Cal.App.4th 268.
Accordingly, the defendants' motion for summary judgment as to the first and second counts of the second amended complaint is granted. See Irwin v. Cohen, supra, 40 Conn. Sup. 263.
 B Tortious Interference with Contract or Beneficial Relationship
"This court has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . [We have held, however, that] not every act that disturbs a contract or business expectancy is actionable. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . . . . [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . . . . The plaintiff in a tortious interference claim must demonstrate malice on the part CT Page 5379 of the defendant, not in the sense of ill will, but intentional interference without justification." (Citations omitted; internal quotation marks omitted.) Daley v. Aetna Life CasualtyCo., 249 Conn. 766, 805-06, ___ A.2d ___ (1999). "[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." (Internal quotation marks omitted.) Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216
(1988). "Where there is a privilege to cause another not to perform, such privilege prevents the activity from being considered tortious." Feen v. Benefit Plan Administrators, Superior Court, judicial district of New Haven at New Haven, Docket No. 406726 (Jan. 13, 1999, Devlin, J.); see also Harry A.Finman Son, Inc., v. Connecticut Truck Trailer Service Co.,169 Conn. 407, 415, 363 A.2d 86 (1975) (holding that the jury had to determine whether the defendant had defeated the action by showing that the interference was not privileged or justified)
The defendants argue that summary judgment should be granted as to the plaintiff's tortious interference with a contract or beneficial relationship claims on the ground that the plaintiff fails to allege all the elements required to sustain the causes of action. Specifically, the defendants argue that because the publication of the March 8, 1995 letter is absolutely privileged, the plaintiff fails to allege tortious conduct. The defendants also argue that the plaintiff's termination from her employment at BFI was predicated upon her failure to meet the standards necessitated by her position, not the publication of the letter.
The plaintiff argues, however, that the publication of the alleged defamatory statements resulted in her termination from her employment at BFI. Indeed, the plaintiff argues that the publication of the letter is not protected by an absolute privilege, but rather the conditional or qualified privilege. Thus, the plaintiff argues that because Barnes had an improper motive for publishing the letter, the conditional or qualified privilege has been abused and lost.
The court having found the alleged defamatory statements absolutely privileged, such statements cannot be the basis of a tortious interference claim. See Feen v. Benefit PlanAdministrators, supra, Superior Court, Docket No. 406726. Therefore, since the only tortious conduct alleged by the plaintiff in support of her claim is the defendants' publication of the privileged statements, the plaintiff is unable to establish a prima facie case for tortious interference with a CT Page 5380 contract or beneficial relationship. See Daley v. Aetna Life Casualty Co., supra, 249 Conn. 806.
Accordingly, the defendants' motion for summary judgment as to the fifth and sixth counts of the second amended complaint is granted.
____________________ SKOLNICK, J.